Appeal No. 16-14534

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE

## ELEVENTH CIRCUIT

PAUL F. JANNUZZO,

*Plaintiff-Appellant*,

v.

GLOCK, INC.,
CONSULTINVEST, INC., ROBERT T. CORE, and JOHN F. RENZULLI,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Northern District of Georgia
Case No. 1:15-cv-02445-TWT

**Reply Brief of Appellant Paul F. Jannuzzo**

John Da Grosa Smith
Kristina Jones
SMITH LLC
1320 Ellsworth Industrial Boulevard
Suite A1000
Atlanta, GA 30318
(404) 605-9680

*Attorneys for Plaintiff-Appellant Paul F. Jannuzzo*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, counsel for Appellant Paul F. Jannuzzo certifies that the following is a complete list of the persons and entities who have an interest in the outcome of this case:

Bersinger, Amanda Kay Seals

Bondurant, Mixson & Elmore, LLP

CON Holding GmbH

Consultinvest, Inc.

Core, Robert T.

Doherty, Ronan Doherty

Floyd, John E.

Glock, Gaston

Glock GesmbH

Glock Immobilien Management GesmbH

Glock, Inc.

INC Holding GesmbH

Jannuzzo, Paul F.

Jones, Kristina M.

Kohler, Michael Paul

Miller & Martin PLLC-ATL

Mykkeltvedt, Tiana Scogin

Parker, Christopher Evan

Renzulli, John F.

Smith LLC

Smith, John Da Grosa

Thrash, Judge Thomas W.

There is no publicly traded company or corporation that has an interest in the outcome of this appeal.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement .........C-1 of 2

Table of Authorities ................................................................................................iii

Introduction.............................................................................................................. 1

Argument and Citations of Authority ...................................................................... 3

    I.      Defendants never had probable cause to prosecute Jannuzzo.............. 3

    II.     The Court should reject Defendants' efforts to impose a pleading

           burden beyond what the law requires.................................................... 7

    III.    The Court should not dismiss the RICO claims on grounds not

           decided by the district court. ............................................................ 12

          A.    Jannuzzo's RICO claim is not time-barred. ............................ 12

          B.    There is no estoppel because there is no RICO conviction...... 17

          C.    The complaint alleges proximate cause. ................................. 17

    IV.    The additional arguments raised by Core have no merit.................... 18

          A.    Core's conduct was a proximate cause of the convictions....... 19

          B.    The complaint alleges that Core acted with malice. ................ 19

          C.    Core's purported agency does not absolve him. ...................... 21

          D.    The complaint alleges that Core violated Jannuzzo's rights.... 22

Conclusion ............................................................................................................ 24

Certificate of Compliance ..................................................................................... 26

Certificate of Service ...................................................................................... 27

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) ........................................ 18

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ........................................... 20

*Bell A. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ................................................ 21

*Blalock v. Anneewakee*, 206 Ga. App. 676, 426 S.E.2d 165

    (Ga. App. 1992) ................................................................................ 14

*Cobb County v. Jones Group P.L.C.*, 218 Ga. App. 149, 460 S.E.2d 516

    (Ga. App. 1995) ................................................................................ 16

*Frantz v. Walled*, 513 F. App'x 815 (11th Cir. 2013) ........................................... 14

*Georgia v. Robins*, 296 Ga. App. 437, 674 S.E.2d 615 (Ga. App. 2009) ................. 4

*Glock, Inc. v. Harper*, 340 Ga. App. 65, 796 S.E.2d 304 (Ga. App. 2017) ...... 16, 17

*Griffin v. Georgia Power Co.*, 186 Ga. App. 565, 367 S.E.2d 832

    (Ga. App. 1988) .................................................................................. 6, 7

*Holder v. Georgia*, 319 Ga. App. 239, 736 S.E.2d 449 (Ga. App. 2012) ............... 10

*Jannuzzo v. Georgia*, 322 Ga. App. 760, 746 S.E.2d 238 (Ga. App. 2013) ..... 5, 7, 9

*Klopfenstein v. Deutsche Bank Securities, Inc.* 592 F. App'x 812

    (11th Cir. 2014) ................................................................................ 15

*Lovinger v. Pfeffer*, 107 Ga. App. 636, 131 S.E.2d 137 (Ga. App. 1963) ............. 10

*Merritt v. Georgia*, 254 Ga. App. 788, 564 S.E.2d 3 (Ga. App. 2002) ................... 4

*Monroe v. Sigler*, 256 Ga. 759, 353 S.E.2d 23 (Ga. 1987) ........................................ 7

*Perry v. Brooks*, 175 Ga. App. 77, 332 S.E.2d 375 (Ga. App. 1985) ..................... 21

*Pombert v. Glock, Inc.*, 171 F. Supp. 3d 1321 (N.D. Ga. 2016) ........................... 22

*Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007) ................................................ 6

*Taylor v. Georgia*, 44 Ga. App. 64, 160 S.E. 667 (Ga. Ct. App. 1931) ................... 4

*Wal-Mart Stores, Inc. v. Blackford*, 264 Ga. 612, 449 S.E.2d 293 (Ga. 1994) 7, 8, 9

*Williams v. Georgia*, 13 Ga. App. 338, 79 S.E. 207 (Ga. Ct. App. 1913) ............ 4, 5

*Willis v. Brassell*, 220 Ga. App. 348, 469 S.E.2d 733 (Ga. App. 1996) ................ 20

*Wolf Camera, Inc. v. Royter*, 253 Ga. App. 254, 558 S.E.2d 797 ......................... 20

**Statutes**

O.C.G.A. § 16–14–8 ................................................................................................ 16

O.C.G.A. § 51-7-44 ................................................................................................ 20

**Rules**

11th Cir. L.R. 26.1-1 ............................................................................................... 1

11th Cir. L.R. 26.1-2 ............................................................................................... 1

11th Cir. L.R. 26.1-3 ............................................................................................... 1

Fed. R. App. Proc. 26.1 ........................................................................................... 1

Ga. Ct. App. R. 33(a) ............................................................................................. 21

Ga. Unif. Super. Ct. R. 42.1 .................................................................................. 21

It is a fraud to prosecute a case that was knowingly indicted outside the statute of limitations. Defendants did that here. They obtained an indictment that expressly alleged that a corporation (Glock Inc.) didn't know something. They presented that indictment to the judge and then the jury and asked them to find that the corporation didn't know something.[1] But Glock Inc.—and therefore the State of Georgia for purposes of the prosecution—*always had* the knowledge Defendants claimed it lacked. The Georgia Court of Appeals confirmed that when it reversed Jannuzzo's conviction.

The prosecution (through Glock Inc.) *always knew* that Jannuzzo had the pistol he was charged with converting. They knew that when they obtained the indictment. A supposed crime emanating from that fact could never have been subject to tolling. They obtained an indictment and presented it to the trial court and the jury anyway.

Defendants don't confront these simple facts.

Instead, Defendants try to denigrate Jannuzzo with sensationalized but wholly irrelevant details and paint Jannuzzo as a criminal who "escaped" justice on a technicality. Tellingly, Defendants never assert that they had probable cause to

---

[1]   That supposed lack of knowledge was critical because Jannuzzo's prosecution depended on the tolling of the statutes of limitation.

prosecute Jannuzzo. They would rather invite the Court to make moral judgments about Jannuzzo's supposed guilt.

The decision by the Georgia Court of Appeals—which held that Jannuzzo's criminal prosecution was absolutely barred by the applicable statutes of limitation—*is sufficient under Georgia law to support a malicious prosecution claim*. Defendants must respond to that claim. They don't get to avoid accounting for their own conduct by arguing that Jannuzzo is a bad guy who doesn't "deserve" to bring these claims.

Jannuzzo's convictions were reversed because the State of Georgia could not prove beyond a reasonable doubt that the alleged conduct took place during the applicable limitations period. That was an essential element of proof to Jannuzzo's prosecution. It wasn't there. It was *never* there. No matter how much Defendants really didn't like Jannuzzo or really wanted to see him punished, the law does not allow them to manufacture and fabricate a case to exact their own individual judgments about justice.[2]

The law specifies precisely what must be proved in order to prosecute an individual for a crime. Defendants do not get to decide which pieces of proof "really

---

[2] O.C.G.A. § 51-7-43 ("Lack of probable cause shall exist when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused.").

matter," disregard the others, and then press ahead. When Defendants knowingly did these things, they committed malicious prosecution.

## ARGUMENT AND CITATIONS OF AUTHORITY

**I.   Defendants never had probable cause to prosecute Jannuzzo.**

The gravamen of a malicious prosecution claim is the absence of probable cause. Probable cause depends on what Defendants knew and the actions they took in the face of that knowledge. But Defendants don't assert that they acted with probable cause. And they don't respond to Jannuzzo's allegations that they acted without probable cause. They don't address their decision to proceed with the criminal prosecution, despite the fact that it was always barred by the statute of limitation.

Here, Jannuzzo alleges that the facts Defendants *indisputably always knew* prevented them from *ever* having had probable cause to institute or support the criminal prosecution against him. Defendants either cannot or will not respond to this. They prefer to improperly recast Jannuzzo's allegations into ones for which they do have a response. Defendants characterize Jannuzzo's claims as centering on a failure to produce exculpatory evidence. The district court accepted this characterization and evaluated the claims in this light. By framing the problem this way, Defendants can point to evidence that was produced at trial—through *Jannuzzo's* efforts—without having to address their own knowledge and conduct. If

the problem at trial had been the mere failure to produce exculpatory evidence, the introduction of that evidence by the criminal defense at trial was a cure. But when the problem is properly understood as an affirmative and knowing engineering of a fatally defective case, Defendants lack a response.

Some of the district court's misapprehension (and Defendants' misdirection) may stem from the fact that the supposed victim of the alleged crime was Glock Inc.—a corporation. Since the prosecution relied on tolling of the statute of limitations, Georgia law required proof that *Glock Inc.* lacked knowledge of the offense.[3] To prove that a corporation lacks knowledge, the prosecution was required to affirmatively establish that "***none*** of those [corporate] officers whose knowledge may be imputed to the corporation knew of the commission of the offense."[4] It had to prove that "the prosecution was begun within less than [four] years from the time that knowledge of the commission of the offense was brought home to ***any single***

---

[3] *Georgia v. Robins*, 296 Ga. App. 437, 438–39, 674 S.E.2d 615, 616 (Ga. App. 2009) ("The burden is unquestionably upon the state to prove that a crime occurred within the statute of limitation, or, if an exception to the statute is alleged, to prove that the case properly falls within the exception."); *Merritt v. Georgia*, 254 Ga. App. 788, 564 S.E.2d 3 (Ga. App. 2002).

[4] *Williams v. Georgia*, 13 Ga. App. 338, 79 S.E. 207, 208 (Ga. Ct. App. 1913) (emphasis added). *See also Taylor v. Georgia*, 44 Ga. App. 64, 160 S.E. 667, 670 (Ga. Ct. App. 1931) (prosecution barred because the municipal corporation of City of Atlanta was imputed with knowledge of a member of the city council, the governing board).

*officer* of the corporation whose personal knowledge, due to his relation, could be imputed to the corporation."[5]

Being a corporation, Glock Inc. couldn't get on the stand and falsely proclaim: "I didn't know where the gun was." But Jannuzzo's complaint alleges that Defendants structured the case against him so that it would have the same effect, using misleading testimony from a corporate officer and carefully selected corporate records. The result was that Glock Inc. provided false testimony in the only way possible—through its officers and records.[6] Defendants *always* knew that one or more corporate officers was aware that Jannuzzo had the pistol.

If Glock Inc. were an individual who, despite having actual knowledge, testified at trial: "I didn't know where the gun was," there would be no question of fraud at trial. The testimony of other individuals at trial, that the hypothetical individual Glock Inc. did have such knowledge, would not insulate him from liability. The actual corporation Glock, Inc. can't be insulated from liability because of its physical inability to testify.

---

[5] *Williams*, 13 Ga. App. 338, 79 S.E. at 208 (emphasis supplied).

[6] *Jannuzzo v. Georgia*, 322 Ga. App. 760, 762–65, 746 S.E.2d 238, 241–42 (Ga. App. 2013) (discussing trial testimony by Carlos Guevara, Glock Inc.'s then-general counsel, and business records introduced at trial).

Jannuzzo's criminal trial was not tainted by fraud merely because the prosecution failed to call two individual corporate officers (Kevin Connor and Robert Glock) to testify. The criminal trial was tainted by fraud because Glock Inc. and Defendants engineered and pressed a case that hinged on a fact that was indisputably contrary to its own knowledge.[7] They obtained an indictment that depended on a fact that could never be proved, a fact they knew was not true. They presented that indictment to the judge and the jury. They repeatedly asked the jury to find that the statute of limitations was tolled based on a supposed *lack of knowledge*. This was fraud.[8]

---

[7] Defendants cite to *Sands v. McCormick*, 502 F.3d 263, 269 (3d Cir. 2007), as "holding that the defendants' alleged knowledge of a time-bar did not plead an absence of probable cause because the question remained open until the trial court ruled on it." Appellees' Br. at 25. *Sands* is of no help to Defendants. There, the court held that the police officer defendant did not have to consider the statute of limitations at the time he made the arrest and noted that it "is an affirmative defense that is to be ruled upon by a court of competent jurisdiction." *Id*. at 269. Here, the lack of knowledge was indisputably an element of proof for the prosecution. Defendants crafted an indictment that **expressly relied** on the supposed lack of knowledge and proceeded on it.

[8] As discussed more fully in Jannuzzo's opening brief, both the jury's verdict and the trial court's denial of Jannuzzo's directed verdict motion were tainted by fraud. Defendants cite *Griffin v. Georgia Power Co.*, 186 Ga. App. 565, 567, 367 S.E.2d 832, 834 (Ga. App. 1988) as "foreclose[ing] Jannuzzo's theory that the appellate decision necessarily reverses all the trial court's directed verdict rulings." Appellees' Br. at 27. But in *Griffin*, there was no subsequent appellate reversal—as there was here. Nor was there any allegation of fraud at trial. *Griffin* recognized that a trial court's denial of a directed verdict establishes probable cause *only* if "unreversed and in the absence of fraud or corruption." *Id*. at 566,

## II. The Court should reject Defendants' efforts to impose a pleading burden beyond what the law requires.

Defendants argue that the Court should affirm the dismissal of the complaint "because Jannuzzo has never alleged that he did not commit the conduct for which he was prosecuted."[9] But Jannuzzo alleged—as the Georgia Court of Appeals held—that the prosecution was always barred by Glock Inc.'s knowledge. Neither *Wal-Mart Stores, Inc. v. Blackford*,[10] on which Defendants principally rely, nor any other Georgia law, support the argument that Jannuzzo was required to plead (and eventually prove) anything else.

---

367 S.E.2d at 833 (citing *Monroe v. Sigler*, 256 Ga. 759, 353 S.E.2d 23 (Ga. 1987)).

Jannuzzo's allegations of fraud render *Griffin* inapplicable. Here, the Georgia Court of Appeals reversed, finding the evidence insufficient to support the convictions. This necessarily means that the trial court got it wrong when it denied Jannuzzo's motions for directed verdict. This is true for each of Jannuzzo's directed verdict motions because the appellate court recognized that the evidence introduced in the State's case defeated tolling. *Jannuzzo*, 322 Ga. App. at 764, 746 S.E.2d at 241–42 ("In compliance with federal regulation, Glock kept written records of the whereabouts of every gun it owned and loaned, and the records showed that Glock knew the pistol remained in Jannuzzo's possession when he left Glock's employment in February 2003."). Evidence introduced later by the defense reinforced this. *Id.* at 764, 746 S.E.2d at 242 ("Moreover, a couple of weeks after Jannuzzo left employment, Glock's general counsel received a call from Jannuzzo confirming that he still had the pistol.").

[9] Appellees' Br. at 28. The district court did not rule on this argument and Jannuzzo urges this Court not to consider it for that reason.

[10] 264 Ga. 612, 449 S.E.2d 293 (Ga. 1994).

*Blackford* has no application here. In that case Wal-Mart prosecuted Blackford for passing a bad check, but the court dismissed the charges on Wal-Mart's motion.[11] Blackford sued Wal-Mart for malicious prosecution, and Wal-Mart sought to prove at trial that Blackford was "in fact guilty of the offense with which she had been charged."[12] The trial court refused to allow that evidence, and on appeal, the Eleventh Circuit certified the question to the Georgia Supreme Court:

> In a suit alleging malicious prosecution of a criminal bad check that was dismissed by the court without trial, is evidence admissible that tends to prove plaintiff's guilt in fact of the offense and, if so proved, is guilt a bar to the malicious prosecution suit?

The Georgia court concluded that evidence of "actual guilt" is "irrelevant in determining the existence of probable cause" but may be admissible "in defense of the action to show that the plaintiff, who is in fact guilty, has suffered no damage as a result of the arrest."[13]

*Blackford* is of no help to Defendants because the Georgia Court of Appeals concluded that the statute of limitations was not proved in Jannuzzo's case.[14]

---

[11]  *Id*. at 612–13, 449 S.E.2d at 294.

[12]  *Id*.

[13]  *Id*. at 613, 449 S.E.2d at 294–95.

[14]  "[W]e find no evidence that could support a finding by the jury that Glock's actual knowledge of the theft by conversion occurred any later than February or March 2003—more than six years prior to the June 12, 2009 indictment. It follows that the State failed to carry its burden to prove that Jannuzzo was

Jannuzzo's guilt was not proved at his criminal trial, and it never could have been proved because Glock Inc. always knew the location of the pistol.

*Blackford* applies when the underlying criminal case was not tried. In that situation, the malicious prosecution defendant may introduce evidence of the Defendant's "actual guilt" to show that the plaintiff suffered no damage. But there is no basis to extrapolate that to a situation in which, after a jury trial, the conviction was reversed by the appellate court for a failure of proof. This would allow malicious prosecution defendants to essentially relitigate the elements of a criminal trial. That is not what *Blackford* stands for.

And even if *Blackford* had some application here, it does not impose an additional pleading burden on the malicious prosecution plaintiff. Rather, it offers a potential defense in cases in which the underlying criminal charges were dismissed without trial.[15] Before *Blackford*, Georgia courts had already expressly rejected imposing a burden of pleading "innocence" on the malicious prosecution plaintiff:

> The innocence of the plaintiff is not an essential element
> to his cause of action. . . . He has the heavier burden of
> persuading the jury that the defendant, as a reasonable

---

indicted on the theft by conversion charge within the four-year statute of limitation." *Jannuzzo*, 322 Ga. App. at 764, 746 S.E.2d at 242 (internal cite omitted).

[15] *Blackford*, 264 Ga. at 613, 449 S.E.2d at 295 ("[A]lthough evidence of actual guilt is irrelevant in determining the existence of probable cause, such evidence is admissible in defense of the action . . .").

9

man, did not have probable cause for bringing the criminal charges against him. By merely denying plaintiff's allegation that the criminal charges were false, the defendants did not shift to the plaintiff the burden of proving his innocence. As to the plaintiff, this allegation was surplusage and immaterial to his case. Under the pleadings here, the burden resting on the plaintiff was to prove the essential elements of his case and no more.[16]

That defense can't be proved here in any event. A "crime" is specifically defined by the law. Proving that a crime was committed means that a prosecutor has probable cause to believe, and can prove beyond a reasonable doubt, all the elements of proof.[17] Here, the Georgia Court of Appeals determined that one element of the prosecution's case—the tolling of the statutes of limitation—could not be proved. It is legally impossible for Defendants to satisfy this affirmative defense.

If a criminal defendant could have been indicted, arrested, and prosecuted under the facts available to the State, the criminal defendant suffers no damage or harm when the State elects not to proceed. That is not what happened here. The State

---

[16] *Lovinger v. Pfeffer*, 107 Ga. App. 636, 637, 131 S.E.2d 137, 139 (Ga. App. 1963) (concluding that trial judge correctly declined to charge jury that malicious prosecution plaintiff had burden of proving his innocence).

[17] *Holder v. Georgia*, 319 Ga. App. 239, 246, 736 S.E.2d 449, 456 (Ga. App. 2012) (court properly instructed jury "that the burden of proof rests upon the state to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt; [and] that no person shall be convicted of any crime unless and until each element of the crime as charged is proved beyond a reasonable doubt").

could not prove (and never could have proved) that the "crime" occurred within the statute of limitations. This has been conclusively determined by the Georgia Court of Appeals.[18] As a result, Jannuzzo was harmed when he was indicted, arrested, subjected to a lengthy trial, and imprisoned on these charges. He was damaged.[19]

The statute of limitation was a necessary element of proof. There is no legal basis for distinguishing it as something apart from "actual guilt." That is a construct of Defendants intended to mislead. If the rule were otherwise, the State could intentionally prosecute someone outside of the statute of limitation in the hopes of obtaining a conviction and knowing it would effectively be insulated from a malicious prosecution claim. The State could either obtain a conviction on stale, time-barred evidence or force a malicious prosecution plaintiff to disprove all of the other elements with the same stale, time-barred evidence. Neither result is just.

---

[18] Indeed, immediately after the Georgia Court of Appeals issued its opinion, Cobb County's new District Attorney Vic Reynolds (who had not been in office during Jannuzzo's criminal trial) confirmed that the case would not go forward. Reynolds stated that the appellate court had been "adamant" in pointing out that the case had a statute of limitations issue and, with that, it would not be appropriate, proper, legal, or ethical for it to go forward. ECF No. 41: Am. Compl. at ¶ 148.

[19] ECF No. 41: Am. Compl. at ¶ 7 ("The result was years of legal proceedings, arrest, imprisonment and associated injuries to Mr. Jannuzzo founded on a prosecution that was never supported by probable cause before [Jannuzzo's] conviction was finally and conclusively reversed by the Georgia Court of Appeals."); *id*. at ¶ 10 (detailing Jannuzzo's arrest and incarceration).

11

By way of example, Jannuzzo's charge was time-barred no later than March 2007. It can't be the case that, to prevail on a malicious prosecution claim, he must—in 2017—affirmatively disprove all other elements of the crimes with which he was charged. The entire purpose of statutes of limitation would otherwise be defeated. There would be no limit to potential abuse. A prosecutor could bring a charge for an act committed in the 1950s, knowing that it would be virtually impossible for the criminal defendant to now disprove all of the elements of the charge if no conviction was obtained.

## III. The Court should not dismiss the RICO claims on grounds not decided by the district court.

Defendants argue that the Court should affirm dismissal of Jannuzzo's RICO claims based on additional grounds that were not ruled on by the district court.[20] This Court should not consider additional arguments that the district court did not accept to warrant dismissal. In any event, none of these arguments have merit.

### A. Jannuzzo's RICO claim is not time-barred.

Defendants argue first that Jannuzzo's RICO claims are time-barred because he should have discovered his injury in 2008 when he was arrested or first indicted. To reach this conclusion, however, Defendants make a number of unsupported leaps.

---

[20] With respect to Defendants' arguments in support of the grounds for dismissal of the RICO claims decided by the district court, Appellees' Br. at 32–41 (Argument § II.A.), Jannuzzo refers the Court to the corresponding section of his opening brief. Appellant's Br. at 51–57 (Argument § III).

Defendants' contention equates Jannuzzo's knowledge that his indictment was not supported by probable cause with Jannuzzo's knowledge about the scheme to frame and maliciously prosecute him. But nothing in the complaint suggests—nor can Defendants point to any allegations—that Jannuzzo was aware of anything when he was indicted beyond the fact of his arrest and indictment. That is far short of demonstrating that Jannuzzo must have *also* been aware at that same time of an underlying RICO violation or the predicate acts necessary to a RICO violation. Indeed, the complaint alleges that Jannuzzo learned about the scheme to frame and maliciously prosecute him "[o]nly after his release from jail [in 2013], through public records requests."[21]

Defendants assume conclusions about *Jannuzzo's* knowledge based on allegations in the complaint about *Glock Inc.'s* actual knowledge that its prosecution efforts were time-barred.[22] Allegations that *Glock Inc.* always knew Jannuzzo's criminal prosecution was time-barred simply provide no basis for Defendants' jump to the conclusion that *Jannuzzo* must also have been on notice when he was indicted that his injury was the result of a racketeering scheme.

---

[21]  ECF No. 41: Am. Compl. at ¶ 165.

[22]  Appellees' Br. at 42–43.

*Frantz v. Walled* is of little help to Defendants as it involved federal and Florida RICO claims.[23] As this Court recognized in *Frantz*, the statutes of limitation begins to run on those claims "when the injury was or should have been discovered, *regardless of whether or when the injury is discovered to be part of a pattern of racketeering.*"[24] This is not, however, the law in Georgia. The statute of limitation does not begin to run for Georgia civil RICO until the plaintiff is aware of his injury *and* "that his injury is part of a pattern."[25]

Defendants also argue that, under *Frantz*, a civil RICO claim accrues on the date of the plaintiff's arrest because he knows, or should have known, of the defendants' wrongdoing and his resulting injury at that time. The plaintiff in *Frantz* was convicted of Medicare fraud and his conviction was affirmed. He subsequently brought civil RICO claims against his criminal co-conspirators, the Medicare payment processor, and their bank.[26] Because Frantz's RICO claims stemmed from his *own* involvement in a Medicare fraud scheme and was against other players in that scheme, he should have been aware of any injury he suffered at the time he was

---

[23] *Frantz v. Walled*, 513 F. App'x 815, 821 (11th Cir. 2013) (cited in Appellees' Br. at 43).

[24] *Frantz*, 513 F. App'x at 821 (emphasis supplied).

[25] *Blalock v. Anneewakee*, 206 Ga. App. 676, 678, 426 S.E.2d 165, 167 (Ga. App. 1992).

[26] *Frantz*, 513 F. App'x at 818.

arrested for his *own* participation in the scheme. Those facts don't support Defendants' contention here that Jannuzzo should have known when he was indicted that it was the result of a pattern of racketeering activity by *others* directed *at him*.

Nor are any of the other cases cited by Defendants helpful to them.[27] In *Klopfenstein v. Deutsche Bank Securities, Inc*., this Court held that the plaintiff had not exercised the reasonable diligence necessary to toll the statute of limitations. He filed suit in 2013, but had received direct information from the IRS in 2000 that the tax transactions that formed the basis of his claims were improper and had been disallowed.[28] That information put the plaintiff on notice that representations made by the defendant banks regarding those transactions may have been false.[29]

It is even less clear why Defendants think the decisions by the Georgia Court of Appeals in *Cobb County v. Jones Group P.L.C.* or *Glock, Inc. v. Harper* are helpful to them. In *Jones Group*, one of the defendants argued that the plaintiffs should have known that they had been injured and that their injuries were part of a pattern outside the five-year statute of limitation for Georgia civil RICO. The Georgia appellate court concluded, however, that "[n]othing in the complaints

---

[27]   Appellees' Br. at 43–44.

[28]   592 F. App'x 812, 815 (11th Cir. 2014).

[29]   *Id*.

establishes that the plaintiffs knew or should have known that they were injured *and* that their injuries were the result of a pattern of activities directed against them."[30]

In *Glock, Inc. v. Harper*, Harper apparently relied only on the amended statute of limitation applicable to civil RICO actions—not the prior version that is at issue here.[31] That amended statute looks to when the racketeering activity ceases, not to when the plaintiff discovers that his injuries are part of a pattern.[32] Contrary to Defendants' suggestions, the Georgia Court of Appeals did not analyze when the statute of limitation for Harper's RICO claim began to run, nor did it reverse the trial court for "declin[ing] to dismiss similar RICO claims based on a malicious prosecution fact pattern because the plaintiff did not file his complaint for more than

---

[30] *Cobb County v. Jones Group P.L.C.*, 218 Ga. App. 149, 155, 460 S.E.2d 516, 522 (Ga. App. 1995) (emphasis in original).

[31] *Glock, Inc. v. Harper*, 340 Ga. App. 65, 66, 796 S.E.2d 304, 306 (Ga. App. 2017) ("In his complaint, Harper alleged that Glock and the other defendants repeatedly carried out the illegal activities at least from August 2002 continuing up to March 15, 2013."); *id*. ("It is undisputed that Harper's civil RICO claims accrued more than five years before the July 1, 2015 revision of the statute of limitation and thus would be time-barred under the pre-July 1, 2015 statute.").

[32] The current version of O.C.G.A. § 16–14–8 provides that a civil RICO action "shall be commenced up until five years after the conduct in violation of a provision of this chapter terminates." Previously, the statute provided that a civil RICO action had to be brought within five years after the conduct terminated "or the cause of action accrues." *Harper*, 340 Ga. App. at 66, 796 S.E.2d at 306 (quoting both versions of O.C.G.A. § 16-14-8. In *Harper*, the Georgia Court of Appeals declined to apply the amended version of O.C.G.A. § 16-14-8 retroactively to revive a claim that was time-barred under the prior provision. *Id.*

16

five years after his January 2010 indictment."[33] The appellate court did not reference the date of the indictment at all in discussing the statute of limitation. It held that the trial court improperly applied the revised statute to revive Harper's claim.[34]

**B.      There is no estoppel because there is no RICO conviction.**

Defendants also argue that Jannuzzo's RICO claims are barred by O.C.G.A. § 16-14-6(e), which states

> [a] conviction in any criminal proceeding shall estop the defendant in any subsequent civil action or civil forfeiture proceeding under this chapter as to all matters proved in the criminal proceeding.

The simple answer to this is that Jannuzzo's conviction was reversed. There was no ultimate conviction in the criminal proceeding.[35] Defendants do not point to any authority suggesting that this statute applies in the face of a conviction that is completely reversed on appeal.

**C.      The complaint alleges proximate cause.**

Defendants cursorily argue that Jannuzzo did not allege he was "innocent" of the conduct charged in the indictment, so he failed to plead that his injury was "by

---

[33]   Appellees' Br. at 44 (citing *Harper*, 340 Ga. App. at 67, 796 S.E.2d at 307).

[34]   *Harper*, 340 Ga. App. at 66–67, 796 S.E.2d at 306.

[35]   *Jannuzzo*, 746 S.E.2d at 239 (Ga. App. 2013) ("Because we find that the State failed to carry this burden on either count of the indictment, we reverse both convictions.").

reason of" the RICO violations. This is yet another iteration of Defendants' "Jannuzzo is actually guilty" refrain. It fails. The complaint alleges that Defendants' acts were undertaken specifically *for the purpose* of harming Jannuzzo.[36] They undertook to criminally prosecute him despite knowing that an essential element of the criminal charges could not be proved. The predicate acts alleged in Jannuzzo's Complaint were committed for this purpose. Jannuzzo has alleged that he was harmed by virtue of Defendants' actions.[37]

## IV.    The additional arguments raised by Core have no merit.

Defendant-Appellee Robert Core argues that he did not engage in malicious prosecution because: (A) his conduct was pre-trial so he didn't commit fraud, perjury, or subornation *at* trial; (B) he did not act with personal malice or ill will; (C) he was acting as an agent for Glock Inc. and not in his individual capacity; and (D) nothing he did was improper or illegal. Each of these arguments fails.

---

[36]    ECF No. 41: Am. Compl. at ¶ 12 ("Plaintiff was the target of Defendants' racketeering scheme. The original and ongoing purpose of the scheme was to inflict harm on Plaintiff individually. His injuries (as detailed herein) are a direct result of that scheme and Defendants' conduct.").

[37]    *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (requiring "some direct relation between the injury asserted and the injurious conduct alleged"); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries")

### A. Core's conduct was a proximate cause of the convictions.

Core argues that there is no proximate cause between his pre-trial conduct and Jannuzzo's convictions at trial. This is merely a reprisal of the same argument raised by the other Defendants—that the complaint insufficiently alleges the jury's verdict was the product of fraud, perjury, or subornation.[38] It fails for the same reasons.[39]

### B. The complaint alleges that Core acted with malice.

Core also contends that there are insufficient allegations he acted with personal malice or ill will. But the Complaint does contain those allegations and they are sufficient.[40] For example, when Jannuzzo declined to plead out, Core stated in an email to Detective Harrison (the investigating officer assigned to the case):

> He's [Jannuzzo] still full of false bravado. . . . His children will only know him as a convict. [Judge] Kell will bury him if he doesn't cooperate.[41]

This certainly doesn't sound like a man who was operating without malice.

---

[38] Core Appellee's Br. at 1-2; Appellees' Br. at 16–28 (Argument § I.A.).

[39] *See supra* at § I; Appellant's Br. at 34–45 (Argument § I).

[40] *See., e.g.*, ECF No. 41: Am. Compl. at ¶¶ 3–6 (providing overview of Core's actions); *id*. at ¶¶ 61–62 (Core hired to effectuate Glock Sr.'s personal animosity toward Jannuzzo and to discredit him through prosecution); *id*. at ¶¶ 92–98 (discussing Core's assistance in drafting the indictment to evade the statute of limitations problem); *id*. at ¶¶ 110–20 (detailing how Core managed document productions, prepared and managed witnesses, and otherwise orchestrated trial presentation); *id*. at ¶¶ 123–24 (manipulation of witness testimony).

[41] *Id*. at ¶ 142.

Moreover, malice may be inferred if a defendant acted wantonly, or with reckless disregard or conscious indifference to the plaintiff's rights.[42] Malice may also be inferred from a total lack of probable cause.[43] Whether the defendant acted with malice is a question for the jury.[44] The complaint alleges facts which, if proved, would allow a reasonable jury to find that Core acted with malice and wholly without probable cause.[45] That is all that is required at the motion to dismiss stage.[46]

---

[42] *Willis v. Brassell*, 220 Ga. App. 348, 352, 469 S.E.2d 733, 738 (Ga. App. 1996) (Malice "consists in personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual injured. Malice may be inferred if defendant's acts were wanton or were done with a reckless disregard for or conscious indifference to the rights of the plaintiff.").

[43] *Wolf Camera, Inc. v. Royter*, 253 Ga. App. 254, 259, 558 S.E.2d 797, 802 ("'A total lack of probable cause is a circumstance from which malice may be inferred.'") (quoting O.C.G.A. § 51-7-44).

[44] *See, e.g., Willis*, 220 Ga. App. at 352–53, 469 S.E.2d at 738–39 (concluding that there was sufficient evidence for jury to find that plaintiff acted with malice where "evidence demonstrated an ulterior motive for Brassell's prosecution" and supported reasonable inference that defendant "had no ground for his actions but his desire to injure Brassell's employer, Trimark, and callously incidentally, Brassell").

[45] *See, e.g.*, ECF No. 41: Am. Compl. at ¶ 69 ("In late 2007 or early 2008, Glock Sr., Glock, Inc., and/or Consultinvest hired Defendant Core, another attorney, to manage, supervise, and control Det. Harrison in the pursuit of the false arrest and prosecution of Jannuzzo. . . . Glock, Inc. had actual knowledge that the conversion offense for which Jannuzzo was being investigated—and on which his entire prosecution hinged—was time-barred under Georgia's four-year statute of limitations for felonies.").

[46] *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."); *Bell A. Corp. v. Twombly*,

### C. Core's purported agency does not absolve him.

Core cites *Perry v. Brooks*, in support of his contention that he can't be liable because he was acting as an agent for Glock Inc. rather than in his personal capacity.[47] In *Perry*, the Georgia Court of Appeals concluded that there was no basis for individual liability of two defendants for malicious prosecution because there was no evidence that they had taken any "personal action with regard to the initiation of the prosecution of [plaintiff]."[48] That decision, however, is physical precedent only.[49] It has not been cited for this point by any subsequent cases.[50]

In fact, the district court rejected this same argument when Core asserted it in a related civil action brought by Jeffrey Pombert (who had also been criminally

---

550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).") (internal cite omitted).

[47] 175 Ga. App. 77, 332 S.E.2d 375 (Ga. App. 1985) (cited in Core Appellee's Br. at 4).

[48] *Id*. at 79, 332 S.E.2d at 378.

[49] Ga. Ct. App. R. 33(a).

[50] Core's reliance on *Sustakovitch v. Georgia*, 249 Ga. 273, 290 S.E.2d 77 (Ga. 1982) for the proposition that Jannuzzo's raising of Uniform Superior Ct. R. 42.1 (which prohibits a victim's attorney from participating in the prosecution of a criminal case) in his criminal trial somehow bars his malicious prosecution claim is also misleading and off target. In *Sustakovitch*, the trial court ruled that a victim's attorney who was permitted to sit at counsel's table was not a private special prosecutor. That ruling prevented the appellant from arguing on appeal that the victim's attorney was appointed as a private special prosecutor.

prosecuted as a part of Defendants' scheme). In that case, the district court concluded:

> [H]ere, Core did take part in the initiation of the Plaintiff's prosecution. Based on the Plaintiff's allegations, Core's purpose in the conspiracy was to initiate the malicious prosecution. And, according to the Complaint, Core was heavily involved with Butters and Harrison in the investigation and eventual indictment of the Plaintiff. Thus, at this stage in the proceeding, the Court is unwilling to conclude that Core cannot be held personally liable for his purported involvement.[51]

As he was with Pombert, Core was "heavily involved . . . in the investigation and eventual indictment" of Jannuzzo. Jannuzzo's complaint details numerous actions taken by Core himself. Core intentionally misrepresented facts regarding Glock Inc.'s knowledge, as well as Georgia law for the purpose of convincing his team that the statute of limitation was not a problem. He improperly influenced witnesses and tampered with evidence.[52] Core was personally motivated by malice.[53] He should be held liable.

## D. The complaint alleges that Core violated Jannuzzo's rights.

Finally, Core argues that he can't be liable for malicious prosecution because none of his actions was improper or illegal. This, however, is based on Core's own

---

[51] *Pombert v. Glock, Inc.*, 171 F. Supp. 3d 1321, 1337 (N.D. Ga. 2016).

[52] *See, e.g.*, ECF No. 41: Am. Compl. at ¶¶ 110–24.

[53] *See, e.g., id*. at ¶¶ 3–6, 61–62, 69, 142.

characterization of Jannuzzo's allegations, rather than what the complaint actually says. Core analogizes himself to a police officer and argues that he had no duty: (1) not to advocate for a time-barred prosecution; (2) to pursue and turn over exculpatory evidence; and (3) to assist in the State's prosecution. Core makes the same mistake as do the other Defendants in their arguments—treating the conduct at issue as mere advocacy and a refusal to turn over exculpatory evidence. Core paints his conduct as a mere failure to be a zealous advocate for Jannuzzo—a story of inaction rather than action. That is not what happened here.

The complaint does not allege that Core failed to investigate the statute of limitation defense on Jannuzzo's behalf, failed to uncover and turn over exculpatory evidence, or otherwise failed to take action. The complaint asserts that Core was an active and knowing participant in circumventing both the facts and established law.[54] He didn't just "fail to investigate" or "fail to pursue." He worked to actively evade and conceal a fatal defect in the prosecution—a fatal defect of which he had full knowledge.

And, despite his analogy, Core is not a law enforcement officer. Nor does he offer any authority for why his conduct as a private citizen should be evaluated under

---

[54] *See, e.g., id.* at ¶¶ 110–20, 134, 136 (detailing active involvement by Core in drafting indictment to circumvent statute of limitations problem, providing intentionally misleading advice to prosecutor, and orchestrating presentation of witnesses and documents for trial).

those standards. Core had no duty to participate in Jannuzzo's criminal prosecution at all. Having ***elected*** to insert himself into those proceedings and take an active role, Core had a corresponding obligation not to violate Jannuzzo's rights. He didn't have a free pass to act with impunity.

## **CONCLUSION**

Georgia law requires that the statute of limitation be proven at trial beyond a reasonable doubt. Defendants want this Court to adopt a rule that would treat the limitations period as a mere technicality, not a substantive element of every crime. Defendants' arguments flow from that mistaken premise—if the limitations period is a technicality, something that didn't fully negate the existence of probable cause, then Jannuzzo would have to prove actual innocence for each element of the crimes with which he was charged in order to prevail on his malicious prosecution claim. But there is no support for Defendants' contentions, which run counter to Georgia law, the applicable pleading standards, and the burden of proof for affirmative defenses.

Defendants want this Court to adopt standards that would disrupt entire bodies of law. The result would create a license for what happened here—giving people impunity to knowingly prosecute cases outside the statute of limitation—unless the criminal defendant can prove with stale evidence that all of the other elements are also not met.

The district court's dismissal of Jannuzzo's complaint, based on at least a partial adoption of Defendants' theories, was improper. This Court should reverse the dismissal and allow Jannuzzo's malicious prosecution and RICO claims to proceed. Alternatively, the district court should have granted Jannuzzo leave to file the Second Amended Complaint. If this Court concludes that dismissal of the Amended Complaint was proper, it should hold that the Second Amended Complaint is sufficient to withstand dismissal and remand this case to proceed with discovery.

Respectfully submitted this 29th day of September 2017.

/s/ John Da Grosa Smith
John Da Grosa Smith
jdsmith@smithlit.com
Georgia Bar No. 660496

Kristina Jones
kjones@smithlit.com
Georgia Bar No. 435145

Smith LLC
1320 Ellsworth Industrial Boulevard
Suite A1000
Atlanta, GA 30318
Tel: 404-605-9680
Fax: 404-935-5226

*Attorneys for Plaintiff-Appellant*
*Paul F. Jannuzzo*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,451 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced, serifed 14-point Times New Roman typeface, using Microsoft Word 2016.

/s/ John Da Grosa Smith
John Da Grosa Smith
jdsmith@smithlit.com
Georgia Bar No. 660496

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 29, 2017, I caused to be filed the foregoing Appellant's Reply Brief through the Court's CM/ECF system, which will automatically send notification of such filing to all counsel of record who have registered with the system and served the foregoing on the Clerk of Court and all counsel of record by Federal Express, overnight delivery at the addresses below:

BONDURANT, MIXSON & ELMORE, LLP
1201 West Peachtree Street, N.W.
3900 One Atlantic Center
Atlanta, GA 30309-3417
Ronan Doherty, Esq.
doherty@bmelaw.com
John E. Floyd, Esq.
floyd@bmelaw.com
Amanda Kay Seals Bersinger, Esq.
bersinger@bmelaw.com
*Counsel for Defendants-Appellees Glock, Inc., Consultinvest, Inc.,*
*and John F. Renzulli*

MILLER & MARTIN
Suite 2100
1180 West Peachtree Street, N.W.
Atlanta, GA 30309-3407
Christopher Evan Parker, Esq.
chris.parker@millermartin.com
Michael Paul Kohler, Esq.
mkohler@millermartin.com
*Counsel for Defendant-Appellee Robert T. Core*

Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St. N.W.
Atlanta, Georgia 30303

/s/ John Da Grosa Smith
John Da Grosa Smith
jdsmith@smithlit.com
Georgia Bar No. 660496